IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

JOHN DODSON,

Plaintiff,

v.

TIME, INC.

Defendant.

CIVIL ACTION NO.: 6:12-2964-MGL

**COMPLAINT**

**(Jury Trial Demanded)**

Plaintiff John Dodson, complaining of the Defendant above named, would allege and say:

**PARTIES**

1. That the Plaintiff is a citizen and resident of the State of South Carolina, County of Greenville.

2. That upon information and belief, the Defendant is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in the State of New York.

**SUBJECT MATTER JURISDICTION**

3. That this Court has subject matter jurisdiction based on diversity of citizenship pursuant to 28 U.S.C.A. §1332. The amount prayed for is in excess of $75,000.00.

**PERSONAL JURISDICTION**

4. That this Court has specific jurisdiction over Time, Inc. pursuant to the South Carolina long-arm statute, SC Code Ann. §36-2-803. The grounds for specific jurisdiction are based upon the Plaintiff's cause of action arising from Defendant (1) transacting business in this State,

(2) committing a tortious act in whole or in part in this State; and/or (3) causing a tortious injury in this State by an act or omission outside this State because Defendant regularly does or solicits business, engages in other persistent course of conduct, and derives substantial revenue from goods used or consumed or services rendered in this State.

**FOR A CAUSE OF ACTION IN LIBEL**

5. That upon information and belief, Defendant publishes *Fortune* magazine and other publications and those publications are regularly distributed, disseminated and sold in the State of South Carolina. Defendant's regular circulation of publications in South Carolina establishes sufficient contacts with this State pursuant to *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984) as well as *Moosally v. W.W. Norton & Co.*, 358 S.C. 320, 594 S.E.2d 878 (Ct. App. 2004).

6. That upon information and belief, Defendant is the owner, domain holder, and internet provider of *Fortune*'s online publication located at CNNMoney.com.

7. That upon information and belief, Defendant, through *Fortune* magazine and CNNMoney.com targets a national, if not international audience and thereby directs electronic activity into this State with the manifest intent of engaging in business or other interactions within this State and with the citizens of this State.

8. That Defendant published and re-published defamatory information of and concerning the Plaintiff online at CNNMoney.com. As such, Time, Inc., through this website and other products and services, does business in the State of South Carolina for the purposes of the South Carolina Long Arm Statute. In doing so, Defendant directs its activities at the

residents of South Carolina and, as a consequence, must reasonably anticipate being haled in to the courts in this State in this action.

9. That on or about June 27, 2012, the Defendant published an article entitled "The Truth about the Fast and Furious Scandal" at CNNMoney.com. This article, authored by Katherine Eban, was billed as follows: "A *Fortune* investigation reveals that the ATF [Bureau of Alcohol, Tobacco, Firearms, and Explosives] never intentionally allowed guns to fall into the hands of Mexican drug cartels. How the world came to believe just the opposite is a tale of rivalry, murder, and political bloodlust." This predicate is false and deceptive in that it leads readers to erroneously believe that it is the only accurate account of these events.

10. That on or about July 23, 2012 Defendant published, distributed, disseminated, circulated and sold *Fortune* magazine publications in South Carolina that promoted its online article "The Truth about the Fast and Furious Scandal." Defendant, through *Fortune* magazine, thereby directed readers to its online article which communicated defamatory information of and concerning the Plaintiff.

11. That readers of *Fortune* magazine at CNNMoney.com reacted swiftly to "The Truth about the Fast and Furious Scandal," posting nearly 4,500 comments and sharing it more than 58,000 times on Facebook and other social media websites.

12. That Defendant published "The Truth about the Fast and Furious Scandal" on the internet where an estimated 40 million people can access and read the defamatory statements of and concerning the Plaintiff. That by publishing the article on the internet, the defamation has become more pervasive. On the internet, Defendant's defamation can continually and on a

daily basis be accessed, printed, forwarded, shared, and re-posted by internet users world-wide, leading to potentially endless replication and re-publication.

13. That the article is fictitious in the sense that it contains facts that Defendant knew to be false prior to publication. Further, the contentions made in the article have been eviscerated in the public domain.

14. That the article generally concerns the United States Justice Department's "gun walking" operation known as "Fast and Furious," which allowed firearms to end up in the possession of Mexican drug cartels. Despite the admitted and unquestioned Justice Department directive to implement this program, known to Defendant prior to publication, the Defendant nonetheless characterized the "public case" of this program as being "..... replete with distortions, errors, partial truths, and even some outright lies." These statements introduced the Defendant's theory that defamed the Plaintiff as more specifically described below.

15. Instead of accurately reporting that the Plaintiff, then an ATF agent stationed in Phoenix, Arizona, was following a department directive, Defendant falsely reported that the Plaintiff initiated gun walking activity based on a grudge he had with his superior. The premise of Defendant's article about the Plaintiff is false and defamatory. Further, Defendant's article is malicious because Defendant, through its author, disregarded whether the statements about Plaintiff are true or false, but rather, relied heavily on the opinion of one person without considering the person's reputation for veracity.

16. The article placed the Plaintiff in a false light by describing him as showing up to work in flip-flops, unprepared, without safety equipment or back up plans, and essentially accusing him of being incapable and unfit in his chosen line of profession, federal law enforcement.

He is described in the article as a "renegade." The article, read as a whole, communicates that Plaintiff is unfit for his profession, a law breaker and motivated by personal grudges as opposed to his oath to follow the law.

17. The article also defamed and demeaned the Plaintiff by communicating that he is lazy and did not want to work weekends.

18. Importantly, the article alleges that the Plaintiff proceeded to intentionally "walk guns" as opposed to at the directive of the Justice Department.

19. The article communicated that he took leave from work without a plan in place to interdict the guns that "walked." In contrast, the Plaintiff had in fact protested and objected to the program within his chain of command.

20. That the article contains numerous falsehoods, inaccuracies, and defamatory statements concerning the Plaintiff alleging that he was incompetent, distrustful, lazy, and importantly, the person initiating the "gun walking" as opposed to him merely following directives. The manner in which Defendant characterizes Plaintiff communicates that the Plaintiff is unfit for his profession as a federal law enforcement agent, that he is professionally incompetent. The article also communicates that the Plaintiff is untrustworthy and a liar.

21. That the Plaintiff has been libeled nationally and internationally by Defendant, injuring his reputation. The falsities in the article subject the Plaintiff to hatred, ridicule and contempt by readers of the *Fortune*, its online article, and other persons. The defamatory statements are serious criminal imputations, unfavorable in the eyes of the Plaintiff's fellow United States citizens, including the citizens of South Carolina where he lives. The Plaintiff has suffered injury to reputation, mental suffering, hurt feelings and other similar types of

damages and injuries which are incapable of a definitive money valuation according to the South Carolina Supreme Court in *Holtzscheiter v. Thompson*, 332 S.C. 502, 506 S.E.2d 497 (1999).

22. Further, Defendant's statements are actionable per se, constituting false imputations of criminal conduct and professional incompetence, unfitness for his profession, giving rise to a general presumption of damages that by law are not required to be proved by evidence.

23. That Defendant was negligent, grossly negligent, willful and wanton in publishing the said statements referenced herein. The allegations against the Plaintiff are so inflammatory and incredulous that Defendant had a duty as a matter of law to investigate the allegations which should have been deemed false.

24. That Defendant purposely avoided the truth, including but not limited to, failing to interview the major witness in the case, the Plaintiff himself, especially when the Plaintiff offered to be interviewed and provided the author the proper protocol for arranging the interview through Plaintiff's employer. Pursuant to the jurisprudence governing this case, the Defendant's actions constitute evidence of recklessness which satisfies the standard of malice set forth in *New York Times v. Sullivan*.

25. That Defendant published these false statements with actual knowledge of their falsity because, for example, congressional staffers informed Defendant through its author prior to publication that the article's premise was flawed. In addition to the statements being made with actual knowledge of falsity, the statements were also published with a reckless disregard for the truth. The departures rise to the level of *New York Times v. Sullivan* malice, especially including the principles espoused in *St. Amant v. Thompson,* 390 U.S. 727 (1968).

26. That Defendant, knowing of the falsity prior to publication, entertained serious doubts as to the truth of the publication as there were obvious reasons to doubt the veracity of informants and the accuracy of the reports given to Defendant.

27. That the Plaintiff is entitled to general damages, special damages, and substantial punitive damages.

WHEREFORE, the Plaintiff, complaining against the Defendants above named pray for judgment against the Defendants, in an amount in excess of $75,000.00 of actual damages, plus substantial punitive damages as the trier of fact may find, together with such other relief the Court deems just and proper.

Respectfully submitted,

S/STEPHEN F. DEANTONIO
Stephen F. DeAntonio
DeAntonio Law Firm, LLC
Federal ID#: 1049
545 Parkwood Estates Drive
Charleston, SC 29407
Telephone: (843) 577-8080
Facsimile: (843) 577-4188
Email: sdeantonio@deanlawfirm.com
*Attorney for Plaintiff*

October 12 , 2012
Charleston, South Carolina